## HORACE SCUDDER et al. versus JOHN BRADFORD.

Where the master of a vessel which was dragging her anchors towards the shore, cut away the masts to prevent her drifting and thereupon she brought up, but after about an hour she drifted again and was wrecked, it was *held* that the cargo which was saved, was not liable in general average, inasmuch as the sacrifice of the masts did not rescue it from the particular peril then impending.

ASSUMPSIT to recover a sum of money as general average.

At the trial before *Shaw* C. J. it appeared, that the plaintiffs were the owners of the schooner Champion, which sailed from New York for Boston about the 22d of January, 1831, with a cargo.

The master deposed, among other things, that on the 31st of January, at about 10 o'clock in the evening, he passed Cape Cod light ; that at 11 o'clock commenced a severe snow storm, with a gale of wind from east-north-east ; that at about 8 o'clock the next morning, he was among Cohasset rocks, and was standing to the westward ; that finding he could not get past them, as the wind was too light, he wore ship to the southward and let go both anchors ; that the schooner kept drifting, and he cut away her masts to prevent her drifting, and she then brought up ; that in about an hour afterwards she drifted again, and continued to drift until she struck on the rocks, and he then slipped both cables and let her go as high as she would, for the preservation of the lives of those on board, and of the cargo. He abandoned her in the afternoon, and the next day he found her dry on the rocks, with her bottom stove to pieces.

It was admitted that the defendant had goods on board the schooner, which were ultimately saved.

A nonsuit was entered. If upon the facts stated in the master's deposition and such as a jury ought to infer from it,

the Court should be of opinion that the plaintiff was entitled to recover, the nonsuit was to be taken off; but otherwise judgment was to be rendered thereon for the defendant.

*March 16th.*    For the plaintiff were cited *Potter v. Providence &c. Ins. Co.*, 4 Mason, 299 ; *Caze v. Reilly*, 3 Wash. C. C. R. 298.

*Peabody* and *Watts*, for the defendant, cited Phillips on Ins. 342 ; Hughes on Ins. 294 ; 3 Kent's Com. 187 ; Stevens on Av. 9, 17 ; *Whitteridge v. Norris*, 6 Mass. R. 131 ; *Bradhurst v. Columbian Ins. Co.*, 9 Johns. R. 9.

*April 1st.*    PUTNAM J. delivered the opinion of the Court. The general rule, that where the property of one is sacrificed for the preservation of that of others, in the prosecution of a voyage, is familiar, but of somewhat difficult application. It must be proved that the sacrifice was necessary and voluntary ; it must be intended for the safety of all concerned, and it must appear that thereby the property which is to contribute, was rescued from the imminent peril then impending. The property saved from the danger which was immediately threatening, shall be held to contribute, notwithstanding it may be lost by subsequent perils in the course of the voyage.

No vessel could be in greater distress and danger than the Champion was in, when the masts were cut away. It was the voluntary act of the master. It was the only thing which could be done, to prevent shipwreck. It was done to save the cargo and ship, and the lives of those who were on board. There was a heavy swell of the sea, which was driving the ship with great violence towards the rocks. The wind was very light, and that also blowing towards the shore. In such circumstances it would have been hazardous if not impossible to bring her on the stays ; so that tacking was out of the question. They tried in vain by wearing ship to keep her off. They threw over their anchors, but they were dragged by the force of the sea. The only hope was, that by the cutting away the masts the anchors might bring up the ship and prevent her drifting towards the shore. If that measure had succeeded, this would have been a case for a contribution ; but it did not succeed. In about one hour after the masts were cut away, the ship drifted and dragged her anchors until she reached and was wrecked upon the rocky shore

It cannot be affirmed that the property which was saved from the wreck was saved by the means of the cutting away of the masts   The forlorn hope failed.   There was no more benefit derived from cutting away the masts before she reached the shore, than from the slipping of the cables afterwards.   It cannot be said that the property was safe or saved during the short space of time that she was brought up.   The sea continued to set and roll with violence towards the shore, until the anchors were dragged as before.   It was one continued peril, which was not avoided by the voluntary destruction of the masts.   Phillips on Ins. 342.   If the anchors had brought up the ship after the masts had been cut away and had held her until the then impending peril had ceased, and the ship had proceeded upon her voyage and been lost afterwards, from other perils, the contribution would be due. For this general average is to be paid once or oftener, although the ship should be finally lost on the same voyage by subsequent and distinct perils.   Weskett, 31, *tit. Average*, § 16. To apply this rule.   Suppose the claim should have been made within the hour that the anchors held the ship after the masts were cut away.   The answer would be obvious. Wait, and see if the ship will ride out this perilous swell of the sea ; if she does, then call for your average.   If she does not, this well intended damage to the ship must go for nothing, as no benefit or safety will be derived from it.   The answer is certainly as good now as it would have been then.   The sacrifice was of no avail, and cannot be the legal foundation of a claim for contribution.   What was saved was saved *tanquam ex incendio*.   Phillips on Ins. 342.

It is the opinion of the whole Court that the judgment must be for the defendant.